## Jesse Clements v. The State.

No. 2413.   Decided December 11, 1901.

Motion for Rehearing Decided January 29, 1902.

**1.—Cattle Theft—Bill of Sale—Notice to Produce—Secondary Evidence.**

On a trial for theft of cattle, the testimony of a witness to the effect that defendant had told him he had gotten the cattle from his (defendant's) uncle and had a bill of sale, which he drew from his pocket and handed witness, who looked at it and handed it back to him, is not secondary evidence which could only be introduced after notice to defendant to produce the bill of sale.

**2.—Same.**

If the evidence above stated had been secondary, defendant could not have availed of the objection on appeal where he might have had the opportunity to have produced the bill of sale itself and did not do so in the lower court.

**3.—Theft of Cattle of Unknown Owner—Testimony Before Grand Jury.**

On a trial for theft of cattle alleged to be the property of an unknown owner, it was competent to produce the testimony of the witnesses before the grand jury, and of the grand jurors, as to the efforts of the grand jury to ascertain the ownership of said cattle.

**4.—Same—Evidence.**

On a trial for theft of cattle, the property of an unknown owner, it is sufficient to show that the ownership of the alleged stolen animals was unknown, and that defendant had no such animals of his own. Distinguishing Dawson v. State, 61 Southwestern Reporter, 489.

### ON MOTION FOR REHEARING.

**5.—Theft of Cattle—Unknown Owner—Proof.**

On the trial for theft of cattle alleged to be the property of an unknown owner, if the State is not able to identify the animals as belonging to a known owner, it would be the property of an unknown owner, and would be covered by the statute (Penal Code, article 445) authorizing the allegation that it was the property of an unknown owner.

Appeal from the District Court of Baylor.   Tried below before Hon. S. I. Newton.

Appeal from a conviction of cattle theft; penalty, two years imprisonment in the penitentiary.

The following is the testimony of the State as adduced on the trial:

J. H. Rambo testified: "I was working for George Brigman during the months of October and November, 1900, and Jesse Clements was working there, too, at said time. Some time in October, 1900, about the —— day of said month, defendant Jesse Clements drove one heifer calf, about six months old, unmarked and unbranded, to George Brigman's ranch in Baylor County, Texas, and about one week later defendant brought two other heifer calves to said ranch, one of them seven months and the other about eight months old. These were also unmarked and unbranded. After defendant drove the last two calves to said ranch, he requested me to help him brand the three head, and we put them in George Brigman's pens and I helped brand them. Defendant said the calves were his, and we placed his brand upon them. A few days after we branded the calves defendant offered to sell them to me, and I asked him where he got them,

and defendant replied, 'From Jim Morgan and Jim Miller.' I then asked defendant what he wanted for the calves, and he replied that he gave either $10.50 or $11.50 per head for them, I don't remember which, but I think he said $11.50. I then told him that that was more than I could afford to pay. About a week after defendant first offered to sell the calves to me, he again wanted to make a sale to me of them, and we had another conversation about the calves. Defendant wanted to know what I would give him for the calves, and I told him I would give him $10 per head if they were straight. He said that he bought them from his uncle Bill Mills. I replied, 'I thought you said before that you got the calves from Jim Morgan and Jim Miller,' and defendant said, 'No, you are mistaken; I did tell you I had been trying to make a trade with Jim Morgan and Jim Miller.' I then told defendant that I would buy the three calves and pay him $10 per head for them in December, provided he straightened them up. Defendant replied that the calves were already straight, and said that he bought them from his uncle Bill Mills, and that he had a bill of sale to them. Defendant then drew from his pocket and showed me an instrument which I took, glanced at, and returned same to defendant, but defendant told me at the time that it was a bill of sale from his uncle, Bill Mills, to him, defendant, for the three calves. I never did take the calves, and haven't yet, and have never paid for them. When I saw the defendant driving the calves upon both occasions he was in George Brigman's pasture and from the direction of W. B. Mills' place, and was in Baylor County, Texas."

Cross-examination: "The defendant may have said in the first conversation we had that he had been trying to make a trade with Jim Morgan and Jim Miller, but that is not the way I understood him. I understood him to say that he bought the calves from Jim Morgan and Jim Miller. Defendant said that he did not tell me that he bought the calves from Jim Morgan and Jim Miller. Defendant did not say that he got the calves down at his uncle Bill's. He said he bought them from his uncle Bill. I never did take the calves. I did not buy them with knowledge that they were stolen. I had an idea the calves were crooked, and that is the reason I told him I would pay for them in December, and is the reason I told him that he would have to straighten them up. Defendant accepted my proposition, but I did not take them or pay for them. The calves were then in George Brigman's horse pasture near the house. Yes, defendant brought the calves upon each occasion to George Brigman's in open daylight and we branded them in open daylight."

Redirect: "Defendant told me that he gave $10.50 or $11.50 per head for the calves, and he agreed to sell them to me for $10 per head."

George Brigman, the second witness for the State, testified: "I live in Baylor County, Texas; I know defendant Jesse Clements, and have known him a number of years. During the year 1900 defendant and J. H. Rambo worked for me on my ranch in Baylor County, Texas. Along

in October I went to Mineral Wells for my health and left defendant and Rambo in charge of my ranch. When I returned defendant had three calves in my horse pasture near the house. Defendant told me about the calves and wanted permission to keep them in my pasture, and I told him all right, he could do so. I asked defendant where he got the calves, and he said that he got them from his uncle Bill Mills. When I saw the three calves they had defendant's brand upon them. The calves were all heifer calves, and about six or seven months old. Two were about the same size and one a little larger. One was a red calf with a white face; one was a red and white spotted, and one was a black and white spotted."

Cross-examination: "The year before defendant brought the calves to my pasture, I gave him the right to put fifteen or twenty head of cattle in my pasture, but he never put them in. He said he wanted to buy up some and wanted a place to keep them, and I told him he could put them in my pasture. He never had permission to put any in my pasture in the year 1900, but it would have been all right for him to have put them in. Defendant bore a good reputation for honesty and fair dealing in my neighborhood until this matter came up. I was not present when the calves were branded. Defendant might have meant that he got the calves over at his uncle Bill's, but he told me that he got them from his uncle Bill."

Redirect-examination: "Defendant did not own any cattle during the year 1900, and never put any in my pasture except the three calves."

W. B. Mills, the third witness for the State, testified as follows: "I know the defendant, Jesse Clements; he is my nephew by marriage. He is my wife's nephew. In 1900 he worked for George Brigman, who lives about four miles from my house. I did not sell defendant any calves during the year 1900 or at any other time. I did not give him a bill of sale to any cattle."

Cross-examination: "My wife could have sold the calves and I would not have objected. She had authority to do so. My home ranch is in Baylor County and I have a ranch in Young County. I was at my ranch in Young County part of the time in October and November, 1900, and my wife could have sold the calves while I was gone. Defendant spoke to me some time in October about putting some yearlings in my pasture and I told him he might do so. My wife and Jess Clements' mother are sisters. Defendant calls me uncle Bill. I sold George Brigman some yearlings."

Redirect-examination: "I sold George Brigman some steer yearlings, but no heifers. I don't think my wife sold any cattle during the year 1900; she did not tell me that she had and I never missed any. If she had sold any I think I would have known it."

Tom Morgan, the fourth witness for the State, testified as follows: "I was on the grand jury at the December term, 1900, when the bill of indictment in this case was found. The grand jury made inquiry as to the owner of the calves defendant is charged to have stolen. We sum-

moned before us George Brigman, John Stevens, and J. H. Rambo, and I myself made a statement before said grand jury. My statement was made as a grand juror when it came my turn, and was not under oath. Myself, Geo. Brigman, John Stevens, and J. H. Rambo were especially interrogated with reference to who was the owner of said three calves. After all this inquiry the grand jury was unable to ascertain who was the owner of said calves, and the ownership of said calves was unknown to the grand jury."

Cross-examination: "We did not summon Jesse Clements before the grand jury because he was gone at that time. John Stevens lives about ten miles from Brigman's ranch, and I live about seven miles from Brigman's, and Rambo then lived with Brigman. I have known defendant ten or eleven years. His reputation for truth and veracity and honesty and fair dealing was good until this matter came up."

Redirect-examination: "We only summoned the three witnesses whom I have named in regard to the ownership of the calves in controversy; all of said witnesses lived in the eastern portion of the county. I have seen the calves in controversy. They were placed in my pasture. One was a red one with white face, one was red and white spotted, and one was black and white spotted. All were heifer calves. We thought we made diligent inquiry to ascertain the owner of said calves."

*Dalton & Brittain* and *Glasgow & Keenan,* for appellant.

*Rob't A. John,* Assistant Attorney-General, for the State.

HENDERSON, JUDGE.—Appellant was convicted of theft of cattle, his punishment assessed at confinement in the penitentiary for a term of two years, and prosecutes this appeal.

Appellant complains of the action of the court in permitting the witness Rambo to testify that defendant had told him that he had gotten the cattle from his uncle Bill Mills, and that he had a bill of sale for them, and drew an instrument from his pocket and handed it to witness to look at, and witness looked at it, and handed it back to defendant. The objection urged to this testimony is that it indicated there was better testimony, to wit, the written bill of sale, and the defendant had received no notice to produce the same. The bill does not disclose the contents of said bill of sale, unless it be conceded that the statement of the bill of sale contained was the same statement made by appellant to Rambo. We understand the State only proposed to use and did use the declaration made by appellant to Rambo, who looked at the bill of sale. It is not stated that he even read the bill of sale, or that he looked at its contents. He appears to have handed it back immediately to appellant. If the witness had made an improper statement as to the bill of sale, appellant had the opportunity to introduce the bill of sale himself; or if it was claimed that he did not then have the bill of sale, but desired to have

an opportunity to produce it, and had made such a motion, his contention here might be entitled to some consideration.

The introduction of the testimony of witnesses before the grand·jury, and of grand jurors, as to what was done by the grand jury to ascertain the ownership or nonownership of the alleged stolen cattle, was entirely proper, and was in response to the allegations in the indictment. See White's Ann. Pen. Code, sec. 1507, subdiv. 2, for authorities.

This was a case of circumstantial evidence and the court did not err in giving a charge on that subject. We fail to find in the record any testimony indicating that Rambo was an accomplice, and the court did not err in not instructing the jury on that subject.

We do not understand the testimony shows that appellant relied on the purchase of the cattle from Jim Morgan or Jim Miller. If he had offered proof on this subject, then he could have claimed an instruction. The State's proof merely showed that he had told the witness he had gotten the cattle from Morgan or Miller, but that he subsequently came back to the witness and corrected this, and stated that he got the cattle from his uncle Bill Mills. And the charge of the court as to this explanation of purchase from Mills or his wife was all appellant was entitled to under the proof.

Appellant insists that the proof here is not sufficient to authorize a conviction for the theft of cattle belonging to an unknown owner, inasmuch as no such cattle were shown to be in that section, and no cattle belonging to an unknown owner were missed, and refers to Melton v. State (Texas Criminal Appeals), 56 Southwestern Reporter, 67, and Dawson v. State (Texas Criminal Appeals), 61 Southwestern Reporter, 489. This is not like the case of Melton v. State, in which there was proof as to the identity of the animal alleged to have been stolen. The animal was known in the community and the State claimed it to be the property of an unknown owner, whereas appellant claimed it as one of Youngblood's cattle, that he was authorized to gather. Here there was no pretense that ownership of the animals was known, or their identity known. Dawson's case is more like the case at bar. But that went off on other propositions than any involved in this case. In that case it was held that, where the State alleged that the ownership of the animals was unknown, it was incumbent on the State to prove this allegation. We also held that under an indictment of that character it was not competent to prove that certain parties in the neighborhood had lost cattle. It was further held that, where there was no evidence to show that the animals found in defendant's possession belonged to an unknown owner, the conviction could not be sustained. In this case the State offered evidence, under the allegations of the indictment, to show that the ownership of the alleged stolen animals was unknown, and, further, that appellant had no such animals of his own. It also showed the circumstances under which appellant procured the calves whose ownership was unknown, and that he claimed at the time that he got them from his uncle Bill

Mills. The main fact here was, did appellant steal the cattle whose ownership was unknown? In our opinion the circumstances adduced in evidence clearly establish this fact, and the jury were amply authorized to find the verdict they did.

There appearing no error in the record, the judgment is affirmed.

*Affirmed.*

### ON REHEARING.

HENDERSON, JUDGE.—The judgment was affirmed at the Tyler term, 1901, and now comes before us on motion for rehearing. Appellant urgently insists that this case comes under the doctrine announced in the Dawson case (Texas Criminal Appeals), 61 Southwestern Reporter, 489, and that under the ruling in that case, this judgment should be reversed. His insistence is that there was no animal known in that community as an estray or the property of some unknown owner, and that no such animal was shown to have been missed.

In the original opinion in this case we endeavored to lay down what we understood was involved in the decision of the Dawson case. However, there are some expressions in that case which would indicate that, in the view of the court, the alleged stolen animal must prior to the theft be known as the property of some unknown owner, and identified as such. We do not believe that such expressions were necessary to the decision of that case; but, if they were, we do not understand that to be the law, and such expressions not in harmony with this opinion are hereby overruled. The statute relating to theft of property belonging to unknown owners is general in its terms, and comprehends the property of all unknown owners. White's Ann. Code Crim. Proc., art. 445; White's Ann. Penal Code, sec. 1483, subdiv. 3; Id., sec. 1507, subdiv. 2. Where an indictment alleges that property was stolen from an unknown owner, the unknown ownership must be proved as any other issue in the case. As was said in Dawson's case: "It is permissible, under our statute, for the grand jury to make diligent inquiry as to the true owner of cattle, and, not being able to find the owner after such inquiry, to allege in the indictment that said cattle were taken, being then and there the property of an owner unknown to the grand jury. But this does not absolve the State from proving that there were cattle belonging to an unknown owner, nor does it absolve the State from proving the usual and customary requisites, to wit: It must be proved that defendant took the animal; that the animal belonged to an unknown owner; that it was taken without the knowledge, will, or consent of said unknown owner, and with the intent to appropriate it to the use and benefit of the party so taking." Now, whether the animal was known in the community at the time as an estray or an animal belonging to some unknown owner, and this was the animal alleged to have been stolen, as was the condition in Melton's case (Texas Criminal Appeals), 56 Southwestern Reporter, 67, or whether the animal shown to have

been stolen was not previously known in the community, or on some account the State was not able to identify the animal as the property of any person, would make no difference. In either event, the State not being able to identify the property as belonging to a known owner, it would be the property of an unknown owner, and would be covered by our statute authorizing the allegation that it was the property of an unknown owner.

The motion for rehearing is accordingly overruled.

*Motion overruled.*