## W. U. KUYKENDALL v. THE STATE.

No. 12987. Delivered December 3, 1930.
Rehearing Denied January 28, 1931.
Second Rehearing Denied April 8, 1931.

The opinion states the case.

*A. G. Mueller,* of Llano, and *G. A. Walters,* of San Saba, for appellant.

*F. H. Hammond,* Dist. Atty., of San Saba, and *J. H. Baker,* Special Prosecutor, of Burnet, and *A. A. Dawson,* State's Attorney, of Austin, for the State.

LATTIMORE, JUDGE.—Conviction for cattle theft; punishment, two years in the penitentiary.

Appellant sold some beef carcasses about sunup March 6th to Watson. Facts were developed upon investigation of how he came by these beeves which seem to the writer to furnish enough support to the inference that the cattle were stolen, to justify the jury in concluding that they were. I will recite some of the facts. Appellant brought these carcasses to San Saba about sunup on the morning of the 6th. He said he bought them from Don Gray, and that the animals were in Gray's mark and brand, and that they were butchered at Gray's ranch. He also stated that he would show the officers the hides off said animals. He brought the beef to town in a Ford car to which was attached a trailer. The officers went with him back to Gray's ranch. Here they found Gray and one Pat Chestnut. When Gray was asked about the hides referred to, he said he had just sold them to a man who lived up somewhere about Eden, and said the man had gone off down a road which Gray indicated. The testimony shows that the night before had been rainy, and that it was

drizzling that morning. The officers took the road indicated by Gray and followed it several miles, but saw no fresh car tracks, and were informed at the first house to which they came that no such car had passed. They returned to Gray's, and after some conversation went on back to San Saba. Pat Chestnut testified that after the officers left going up the road indicated by Gray, as taken by the hide buyer, that Gray said to appellant: "I have thrown them off the track," or have "fooled them". That appellant replied to Gray: "Don, we are up against it,' and I think we had better kill seven more, and get those hides and turn them over to Mr. Urquhart." (Urquhart was the sheriff). To this Gray replied that he would not kill any more, that cattle were worth sixty-five dollars a head. Appellant said that they had better kill seven head of Gray's cattle with Gray's mark and brand on them. After this conversation Chestnut said he left and went out through Gray's pasture, and presently observed under a big tree, blood, offal, etc., indicating that animals had been freshly or recently butchered at this place. He here observed the tracks of a car having a trailer. He followed these tracks down a pasture road to where he ran across a fire still burning in which were heads and hides of cattle. He said the car and trailer tracks went further on and he followed them to where another fire was still burning and in which were articles similar to those in the first fire. He said the hides looked as though they had been rolled up and pitched in the fire. The fires were still burning when he went by the places shortly after noon of the 6th. Testimony was introduced showing that the grand jury had been unable to ascertain the name of the owner of the seven animals referred to. It was in testimony that Gray told the officers when they reached his ranch that the animals killed by him and appellant were his, and that he had sold them to appellant. Appellant testified in line with this that he had been dipping cattle for Gray, and had bought a remnant and that they butchered them the afternoon and evening of the 5th of March. He admitted that they butchered them at a tree some hundreds of yards north of the ranch house. He said he did not take the hides to town with him when he carried the beef, partly because he could get a better price for the hides at Llano than he could at San Saba, and that he expected to have the hides taken to Llano. He also admitted that the hides of the animals were left at the place where they were butchered, and that he supposed they were there when the officers went out to Gray's making their investigation. He said he knew they suspected him of stealing the cattle, but admitted that he made no offer to take them out and show them the heads for the purpose of satisfying them he had bought animals in Gray's mark and brand. Appellant admitted that he had been convicted for cattle theft before, and for other violations of the law.

It occurs to the writer that this evidence is sufficient to justify the

jury in believing that the animals in question were stolen either by appellant alone, or by appellant acting with Gray. In such case we do not think it necessary to show that any particular animals had been at any time seen or known as estrays or running on any of the ranges in San Saba county for a sufficient length of time to establish that they belonged to unknown owners.

The State introduced Mr. Lang, who testified that he had lost seven head of cattle at or about the time of this alleged theft. We do not think this testimony was admissible. The fact, it is said in the Dawson case (Texas Crim. App.), 61 S. W., 489, of the admission of such testimony would be a sufficient basis for the reversal of the judgment, the opinion stating that if appellant stole the cattle of Moore, one of the witnesses who testified to the recent loss of cattle, he should have been indicted for the theft of Moore's cattle; if he stole cattle belonging to the Matador Cattle Company, also shown to have recently lost cattle,, he should have been indicted for the theft of cattle from the Matador Cattle Company, but having been indicted for the theft of cattle from an unknown owner, the proof mentioned should not have been made. We find in this record no objection made, however, to the testimony of Mr. Lang. The matter is discussed here largely because of the qualification placed by the learned trial judge upon a bill of exception complaining of the refusal of a charge relative to the Lang cattle, in which qualification the judge seems to be under the impression that it is proper to prove the loss of other cattle belonging to known owners at or about the time of the alleged theft.

We do not believe that the special instruction asked regarding the loss of the Lang cattle, was a correct announcement of the law. Same merely sought to have the jury told that they would not be authorized to convict the defendant because Lang lost cattle, and that such evidence was admitted merely as "a circumstance of said occurrence".

There are a number of bills of exception, each of which has been considered, but none of which are believed to present reversible error.

The judgment will be affirmed.

*Affirmed.*

Hawkins, J., absent.

ON MOTION FOR REHEARING.

MORROW, PRESIDING JUDGE.—Appellant relies on Melton v. State (Texas Crim. App.), 56 S. W., 67; Dawson v. State (Texas Crim. App.), 61 S. W., 469, and Clements v. State, 43 Texas Crim. Rep., 400, 66 S. W., 301, 303, as holding that to sustain a conviction for theft of property from an unknown owner, there must be proof in the record showing that said property had the status of belonging to some unknown

owner prior to the time same was taken by or found in possession of the accused. We briefly analyze said cases:

In the Clements case, supra, the three calves alleged to have been stolen were brought by the accused to Brigman's pasture. Not a particle of testimony in the record supports the hypothesis that they were estrays or had ever been seen by any witness in the county or neighborhood of Brigman's pasture before they appeared in appellant's possession. To this extent the analogy between the facts in the Clements case and those in the instant case, is exact. Clements made statements as to who he got said calves from, which statements were shown by the State to be false. In this also, that case is like the instant case. The Clements case upon its facts, its reasoning and its conclusions, is authority against the appellant and not in his favor. The judgment in that case was affirmed upon proof that the name of the owner was unknown to the grand jury and at the time of trial, and upon proof further that the explanation of Clements and his claim of purchase were shown to be false. In the opinion in that case Judge Henderson states that upon authority of the Melton case, supra, and the Dawson case, supra, it was urged in behalf of the defense that in as much as there was no proof made that cattle were shown to be in that section belonging to an unknown owner, and no cattle were missed which belonged to an unknown owner,—the testimony was insufficient. The conclusion of Judge Henderson was adverse to this contention. He distinguishes the case about which he was writing from each of those referred to. We think the Melton case, supra, is easily different from both the Clements case and the instant case. The Melton case was reversed for the refusal of a charge that if at the time the accused killed the alleged stolen animal he believed it belonged to Youngblood, he should be acquitted. The proof in that case showed that Mr. Youngblood had authorized Melton to kill animals on the range belonging to him, and appellant testified that when he killed the alleged stolen animal he thought he was killing one of Youngblood's cattle. However, there are some expressions in the opinion in the Melton case referring to the failure of the State to "identify" the particular animal as belonging to an unknown owner, which we feel sure, from what was said by the same eminent judge in his opinion in the Clements case, written later, were intended only to mean that the State had failed to prove that this particular animal belonged to an unknown owner.

Judge Henderson, in the Clements case, distinguishes the Dawson case, supra, on the ground that same went off on the proposition that when the State alleged the ownership of the animal to be unknown, it was incumbent on the State to prove such allegation; also that when there was no evidence to show that the animals found in possession of the accused belonged to unknown owner, the conviction could not stand. In his opinion on rehearing in the Clements case, supra, Judge Henderson

recognized that there were some things said in the Dawson case which were out of line, and he went further and said that if there be in the Dawson case, supra, any expressions indicating as the view of this court that the alleged stolen animal· must, prior to the theft, be known as the property of some unknown owner, and identified as such,—such expressions are not the law, and any of same which do not harmonize with the holding in the Clements case, would be overruled. The final announcement in said opinion on rehearing in the Clements case is as follows:

"Now, whether the animal was known in the community at the time as an estray or an animal belonging to some unknown owner, and this was the animal alleged to have been stolen, as was the condition in Melton's case (Texas Crim. App.), 56 S. W., 67, or whether the animal shown to have been stolen was not previously known in the commuity, or on some account the State was not able to identify the animal as the property of any person, would make no difference. In either event, the State not being able to identify the property as belonging to a known owner, it would be the property of an unknown owner, and would be covered by our statute authorizing the allegation that it was the property of an unknown owner."

It follows that we do not agree with the appellant's contention that this case must be reversed because of what was said in the cases just discussed.

When the indictment charges the theft of property of an unknown owner, the question of variance arises if it be shown on the trial that the averment was made by the grand jury arbitrarily or without sufficient diligence to ascertain the name of the owner. If it appear from the evidence adduced upon the trial that in making the averment, the grand jury could, by reasonable diligence, have ascertained the name of the owner of the property, a variance developed. A variance will not result from the averment, however, when made after proper inquiry though on the trial the proof may show the name of the owner of the property. Jorasco v. State, 6 Texas App., 238; Jorasco v. State, 8 Texas App., 540; Hellums v. State, 55 Texas Crim. Rep., 356, 116 S. W., 590. In a trial for theft under an indictment charging that the owner of the alleged stolen property was unknown, it is deemed necessary to introduce such evidence as will justify the jury in concluding that in the respect mentioned the indictment speaks the truth as to the inability of the grand jury to know the owner and that in the county such cattle were stolen by the accused. See Wharton's Cr. Ev., 10th Ed., Vol. 1, Sec. 97; Underhill's Cr. Ev., 3rd Ed., Sec. 463; Jorasco v. State, supra. Under such an indictment proof of the guilt of the accused and the identity of the cattle may be made by circumstances; that is, by inferences from proven facts. The acts, conduct and declarations of the accused are competent evidence bearing upon the issues. See Wharton's

Cr. Ev., Vol. 1, Sec. 748, p. 1492. In Sec. 749, of the same text, it is said:

"The holding back of evidence may be used as a presumption of fact against the party who holds back such evidence in all cases in which it could be produced.

"While the accused in a criminal case may rely upon the presumption of innocence, and any failure on his part to offer evidence is not an admission of guilt, or even a presumption against him, still, where it appears that he has within his power evidence which is not available to the State, which would show the actual facts, his suppression of such evidence warrants the jury in drawing an inference that its production would be unfavorable to him."

From Burrill on Circumstantial Evidence, page 451, the following quotation is taken:

"There is no doubt that the mere fact of possession of stolen property, which has been satisfactorily identified, if both recent and exclusive, is, in itself, sufficient to raise a presumption strong enough, if unrebutted, to warrant the conviction of the possessor. But such presumption may be materially strengthened by accompanying circumstances, the most prominent of which will now be considered.

"1. *Proximity* of the person of the accused to the place from which the property was stolen, about the time of the larceny, is a strong corroborative circumstance of the concommitant-class.

"2. The *concealment* of the stolen property is a strong circumstance against the possessor. Under this head may be classed acts intended to destroy the identity of the property; such as the erasure of marks or names upon it, etc."

It has often been said that the killing of an animal with the intent to steal it is a sufficient taking of the animal. In Hall's case, 41 Texas Crim. Rep., 287, the accused was convicted of theft of two hogs. The court said:

"The hogs were killed out in the woods, out of the immediate custody of the owner. By the act of killing, under such circumstances, the defendant may fairly be held to have had the hogs under his control and in his possession."

In the present instance, the jury was warranted in finding the appellant's explanation of his possession of the animals a fabrication. Gray was prosecuted for the same offense and his case was affirmed. See Gray v. State, 116 Texas Crim. Rep., 617, 33 S. W. (2d) 457. There is no evidence found in the record which could have been interpreted by the jury as indicating that the appellant was the innocent receiver of animals stolen by some other person.

A rehearsal of the evidence is deemed unnecessary. It in substance appears in the original opinion. The conduct of the appellant and his

578

alleged confederate Gray, as pointed out in the original opinion, was such as would justify the jury in concluding that after stealing the cattle, every tangible fact leading to their identity had been designedly obliterated by the appellant and Gray. Every means of making specific identification of the cattle by marks, brands or color, had been destroyed.

Finding nothing in the record warranting a reversal of the conviction, the motion for rehearing is overruled.

*Overruled.*

### ON APPELLANT'S REQUEST FOR LEAVE TO FILE SECOND MOTION FOR REHEARING.

HAWKINS, JUDGE.—Appellant has requested leave to file a second motion for rehearing in which our attention is directed to the Lane case, (Texas Crim. App.), 45 S. W., 693. This was an earlier case than any of those mentioned and analyzed in our opinion on rehearing. It was not referred to in any of them. We would be inclined to follow the Clements case, 43 Texas Crim. Rep., 400, 66 S. W., 301, it being later than the Lane case, if they are thought to be in conflict, for the reason that the exact point now before us was evidently given more consideration in the Clements case.

Appellant calls our attention to an oversight in not discussing his claimed newly discovered evidence set up in his motion for new trial. It occurs to us that the slightest diligence before the trial would have resulted in finding the evidence claimed to have been newly discovered.

The request for leave to file second motion for rehearing is denied.

*Denied.*